## No. 28,146.

RUTH PYLE and B. S. VON SCHRILTZ, *Appellees,* v. R. J. GODDARD and CHARLES H. WILCOXEN, *Appellants.*

(272 Pac. 144.)

Opinion filed December 8, 1928.

*Walter L. Bullock,* of Dodge City, *C. E. Baker,* of Coldwater, *John W. Davis* and *Russell L. Hazzard,* both of Greensburg, for the appellants.

*J. T. Botts,* of Coldwater, and *Edgar Foster,* of Garden City, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This is an action to rescind a parol contract for the exchange of real and personal property which had been in part executed by the transfer of instruments of conveyance. It was tried to the court, findings of fact were made in accordance with plaintiff's

contention, upon which judgment was later rendered. The defendants have appealed.

The pertinent facts as disclosed by the record may be stated briefly as follows: The plaintiff, Ruth Pyle, who resided at Dodge City, was the owner of a business property in Coldwater commonly known as the opera house. It appears to have been managed and looked after by her father, the plaintiff, B. S. Von Schriltz, who resided at Coldwater. It was encumbered by a mortgage of $4,500, with some accrued interest and taxes. Plaintiffs decided to sell this property, or their interest therein, and had previously talked about that to the defendant, Charles H. Wilcoxen, a real-estate agent of Dodge City. The defendant, R. J. Goddard, resided at Ingalls, where he was engaged in various businesses; among other things he dealt in lands and other property. He owned a transfer business at Larned which consisted of trucks, horses and other equipment common to a transfer business for the handling of freight. There was an office and gasoline filling station and storage rooms for household goods and merchandise. He rented these premises. Some five or six persons were employed in the conduct of the business. The property was encumbered by a chattel mortgage of $2,200, which had been issued by Goddard to a bank at Larned. It seems that Wilcoxen had this transfer business for sale. At any rate he proposed to Von Schriltz the exchange of this transfer business for the equity in the opera house property at Coldwater, and at his solicitation Von Schriltz went to see it. The property was shown to him by Wilcoxen and Goddard. Goddard priced the transfer business at $10,000. Von Schriltz priced the equity in the Coldwater property at $10,500. They talked about how this difference would be settled and about Goddard seeing the Coldwater property, and arranged to meet at Dodge City a few days later. They did meet at Dodge City at the time appointed. Goddard had not seen the Coldwater property, but said he would rely on Wilcoxen's statements concerning it. There is a controversy in the testimony as to whether plaintiffs were advised of the mortgage on the transfer property. Plaintiffs' evidence was to the effect that they knew nothing about any such mortgage and were not advised of it, and that the transfer property was to be clear, while Goddard testified that he told Von Schriltz about the mortgage, that Von Schriltz objected to taking the property with a mortgage on it, and

that he stated he would trade the property either encumbered by the mortgage or clear, as Von Schriltz desired. The terms of the actual trade made by the parties at Dodge City were not reduced to writing, and there is a controversy among them as to just what it was. In behalf of plaintiffs the evidence tended to show that the transfer property, valued at $10,000, was to be traded to them free of encumbrance for their equity in the opera house property at Coldwater, they to receive $500. This $500 Goddard did not want to pay in cash and proposed, in lieu thereof, that he convey a quarter section of land in Gray county owned by him, which he valued at $2,500. This would make $2,000 owing to Goddard, and for that sum land in Texas was to be conveyed to Goddard. This land appears to have been owned by the plaintiff Von Schriltz and the defendant Wilcoxen, and the deal made, as plaintiffs' evidence tends to show, was for Von Schriltz to convey his interest in the Texas property to Wilcoxen, and he to convey the entire title of the Texas land to Goddard, and Goddard to make the deed to the Gray county land to Von Schriltz a two-thirds interest and Wilcoxen a one-third interest.

The evidence on behalf of Goddard tended to show that under their agreement at Dodge City he was to have nothing to do with the Texas land, that the exchange of the transfer property at Larned was to be subject to the mortgage, and that he convey the quarter section of land in Gray county, in lieu of having the Larned property clear, and to make up the difference of $500 between the value of that and the Coldwater property. What was actually done at Dodge City was this: Plaintiffs executed and delivered a deed to Goddard for the Coldwater property, subject to the encumbrances. Von Schriltz also executed and delivered to Wilcoxen a deed for his interest in the Texas land. Goddard executed a deed for the quarter section of land in Gray county, which named as grantees Von Schriltz a two-thirds interest and Wilcoxen a one-third interest. This meeting was held on Saturday. It was agreed by the parties that they would meet at Larned the next Monday, when possession of the transfer business would be turned over and the deal there completed. On Sunday Goddard drove to Coldwater and left the deed which had been delivered to him for the Coldwater property with the register of deeds and asked for its immediate record, and was informed that it would be recorded the first thing Monday morning, which was done. On Monday morning the parties met at Larned. Goddard

gave Von Schriltz three keys for the buildings and desk connected with the transfer property. A bill of sale was to be executed and delivered later in the day. Von Schriltz stayed about the transfer business mostly that day, the employees continued with the work as usual, but he was unable to see Goddard, or at least did not see him until about five o'clock in the evening. At some time during the day he traded off a team that was a part of the transfer property and received some cash difference. He also paid a telephone bill, and perhaps another bill or two that were presented. About five o'clock, and just before a train left Larned for the west, Von Schriltz met Goddard, who gave him a bill of sale of the transfer property which recited that it was subject to a chattel mortgage to the bank for $2,200. The evidence is in conflict as to what then occurred. On plaintiffs' behalf it is that Von Schriltz read the bill of sale, observed the provision concerning the mortgage, immediately told Goddard that he would not accept the property that way, tried to give the bill of sale back to him, which Goddard refused to take, and that Von Schriltz told him that the deal was off, and he would not accept the property. In behalf of the defendant the evidence was to the effect that the only objection Von Schriltz made to it was that he wanted to handle this chattel mortgage in such a way that his wife would not have to sign it. At any rate, Goddard took the train in a few minutes and left. This was July 2. Von Schriltz remained at Larned the next day, and either that day, or within a few days, he got back the team which he had traded off and collected the money from the parties on the bills which he had paid. He endeavored to get in communication with Goddard, and did talk to him by telephone, asking him to come to Larned and straighten the business up, which Goddard declined to do, and on July 5 plaintiffs brought this action for rescission. Pending the trial of the action Von Schriltz had paid no attention to the transfer property at Larned, his evidence being that he took no possession of it except as to familiarize himself with it on the Monday pending the delivery of the bill of sale, and it appears that Goddard paid no further attention to it, for the bank foreclosed its chattel mortgage and sold the property thereunder. Pending this action an execution was issued on a personal judgment which some third party had previously obtained against the plaintiff Von Schriltz, and a levy thereunder was made upon his interest in the property in Gray county which

had been conveyed to him by Goddard, and his interests had been sold under that execution. The court made findings of fact as follows:

"1. The court finds that the defendant, R. J. Goddard, represented to plaintiffs that the transfer property at Larned was free and clear of encumbrance, all as charged in the petition.

"2. That the plaintiffs relied on said representations and made a delivery of deeds to the Coldwater property and to the Texas land in reliance thereon.

"3. That the defendant, R. J. Goddard, conveyed a two-thirds interest in the Gray county land to B. S. Von Schriltz, and a one-third interest to defendant, Charles H. Wilcoxen.

"3a. That upon the delivery of bill of sale to the Larned transfer by R. J. Goddard to R. S. Von Schriltz in Larned on the 2d day of July, 1923, Von Schriltz then and there told Goddard that he never would accept the property that way, that the property was to be clear, and that the deal was all off. That the plaintiffs herein acted promptly and brought an action on the 5th day of July, 1923, wherein they still insisted on a rescission.

"4. That plaintiffs, if they ever had any control or possession of said transfer outfit, delivered the same to the defendant, R. J. Goddard, prior to the sale thereof under the mortgage held by the First State Bank.

"5. That the two-thirds interest in the Gray county land sold to B. S. Von Schriltz has been sold under execution based on a debt B. S. Von Schriltz owed, and the redemption period does not expire until six months after the sale day, April 13, 1925.

"6. The court finds generally in favor of the plaintiffs on all the issues in this case.

"7. The court finds that there is no evidence of a competent and legal import authorizing him to make any order with reference to a reconveyance by the defendant, Wilcoxen, of the Texas land to the plaintiff, Von Schriltz."

As a conclusion of law the court found there should be judgment for plaintiffs conditioned on plaintiffs clearing up the title to the Gray county land by reason of the execution levy thereon and sale thereunder, and directed that plaintiffs and the defendant Wilcoxen should reconvey that property to Goddard. These conditions imposed on plaintiffs were complied with and a final order of the court was made for the rescission of the trade, canceling the deed from plaintiffs to Goddard for the opera house property at Coldwater. A decree was made that Wilcoxen should convey his interest in the Texas land to Goddard, and in default of his doing so the decree itself should operate as such conveyance.

The defendants have appealed and argue several points, the principal ones being that plaintiffs were not entitled to rescission, for the reason, first, that the plaintiffs had assumed possession and con-

trol of the transfer property at Larned, had actually sold and disposed of some of it, and had assumed management and control by directing the men in the work and paying bills, all of which acknowledged ownership of the property, by reason of which plaintiffs could not then rescind—that their only remedy was for damages. There is not much merit in this argument. The most that plaintiffs did in that connection was pending a real delivery of the property by a properly executed bill of sale, the part of the property sold was restored promptly, and any management .or control of the business was necessarily tentative. The rejection of the property was prompt when the bill of sale was offered. In legal effect it was then turned back to Goddard. The fact that Goddard went away and paid no further attention to it is of no consequence. Any conflict in the evidence on this point was resolved in favor of the plaintiffs and is not open to consideration here.

The second principal contention of appellants is that plaintiffs did not restore to Goddard the property he had parted with, and were not in position to do so, hence à decree of rescission was improper. With respect to the Larned transfer property it is argued that plaintiffs never did restore this to Goddard, nor tendered or delivered it back to him; that what plaintiffs did was really to deliver it to the bank that held the mortgage. The findings of the court are against defendants on that contention, and the findings are supported by the evidence on behalf of plaintiffs. Appellants argue that Goddard sustained a great loss by the sale of the Larned property under the chattel mortgage. If so, it was occasioned by his own conduct in refusing to receive the property when it was tendered to him Monday evening, July 2, or to take it when the action for rescission was brought three days later. And it is argued that plaintiffs were not in position to convey back to Goddard the Gray county land, for the reason, first, that it had been levied upon under an execution and sold; and, second, because the title to one-third of this was conveyed to the defendant Wilcoxen. So far as the sale of that land under an execution against Von Schriltz is concerned, the court protected defendant's right in that, and the conveyance ultimately made to him by plaintiffs was free from any lien of that execution; and so far as the interest conveyed to the defendant Wilcoxen in that land is concerned, Wilcoxen was a party to this action, the decree of the court required him to convey his interest to .

Goddard free of encumbrances, and provided, in the event he did not do so, that the decree itself operate as such conveyance. The result is that Goddard, by the decree of the court, received the full title to the Gray county land free of any liens or encumbrances by reason of the title having at one time been vested in plaintiffs and in Wilcoxen.

Appellants further contend that the court was not justified, under the evidence, in decreeing a rescission. This depends on whether or not the transfer business at Larned was to be conveyed free of encumbrance. If that was the agreement, plaintiffs were not required to take it subject to a chattel mortgage of $2,200, and they were justified in refusing to go ahead with the business. Just what was the agreement in that respect must be determined from the parol testimony, since the agreement itself was not reduced to writing. The best that can be said in appellants' behalf on that question is that the testimony concerning it was in conflict. The trial court has decided it, the decision is supported by competent evidence in the case, and the finding is binding upon this court.

A few other questions are argued with reference to evidence received or evidence excluded. We have examined these questions and find no error in them. We do not regard them as of sufficient importance to require that they be set out and separately discussed. There is no error in the record, it seems clear that a just result was obtained, and the judgment of the court below is affirmed.